983 F.2d 1066
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Milton JAFFE, Plaintiff-Appellee,
v.
CLEVELAND HEIGHTS-UNIVERSITY HEIGHTS CITY BOARD OF
EDUCATION, Defendant,
and
Irving Moscowitz, Defendant-Appellant.
 No. 92-3209.
 United States Court of Appeals, Sixth Circuit.
 Jan. 7, 1993.
 
 Before MERRITT, Chief Judge, and BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Milton Jaffe, filed an action pursuant to 42 U.S.C. § 1983 against the defendants, the Cleveland Heights-University Heights City Board of Education and Irving Moscowitz. As the basis for this action, Jaffe claims that the defendants deprived him of due process by coercing him into early retirement from his teaching position. Moscowitz filed a motion for summary judgment as to the claims asserted against him in his individual capacity, claiming the protection of qualified immunity. The district court denied summary judgment on Moscowitz's qualified immunity claim. For the following reasons, we affirm.
 
 
 2
 Our review of the facts on an appeal involving the district court's decision regarding summary judgment is the same as the review employed by the district court. Washington v. Newsom, et al., No. 91-2355, slip op. at 4 (6th Cir. October 15, 1992). Therefore, we must view the facts in the light most favorable to the non-moving party, in this case Jaffe, to determine whether genuine issues of material fact remain for resolution at trial, or whether the movant is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
 
 
 3
 Milton Jaffe began employment with the defendant, Cleveland Heights-University Heights City Board of Education, as a teacher in 1961. Jaffe taught at Roxboro Elementary School for 27 years. He obtained tenure prior to 1988, when the events leading to this lawsuit took place. In 1988, defendant Irving Moscowitz was the School Superintendent.
 
 
 4
 On June 2, 1988, while Jaffe was conducting a fifth-grade remedial reading class, three girls were being disruptive and disobedient. Jaffe sent these students to the principal's office for disciplinary reasons. On June 3, 1988, Moscowitz summoned Jaffe to his office and told Jaffe that some students had accused him of sexual misconduct. Jaffe later learned that the three girls he had sent to the principal's office on the previous day were among those who had accused him of sexual misconduct. In light of these accusations, Moscowitz summarily suspended Jaffe with pay and told Jaffe not to report back to Roxboro Elementary. Jaffe contacted Glenn Aultschuld, the President of the Cleveland Heights Teachers Union, who kept in contact with Jaffe on this matter throughout the summer. In the fall of 1988, Moscowitz removed Jaffe from suspension and reassigned him to teach at Wiley Elementary School.
 
 
 5
 On September 16, 1988, the Cuyahoga County grand jury indicted Jaffe on three counts of gross sexual imposition. Jaffe contacted Aultschuld and George Palda, the Union's attorney, after receiving the indictment. Aultschuld and Palda alerted Jaffe to the possibility that the School Board might terminate his employment. Between September 16 and September 26, Moscowitz met privately with various members of the School Board to determine what action to take in light of the indictment. On September 26, 1988, Moscowitz, through Aultschuld, summoned Jaffe to his office. Moscowitz told Aultschuld to inform Jaffe not to act in a "John Wayne" manner. Just before this meeting, Aultschuld requested that Moscowitz suspend Jaffe with pay pending investigation and resolution of the charges. Moscowitz denied this request, telling Aultschuld that he wanted Jaffe "out one way or another." Furthermore, Moscowitz warned Aultschuld that, as a condition to Jaffe's presence at the meeting, Jaffe was not permitted to speak, except to say that he was innocent.
 
 
 6
 At the meeting, Moscowitz made the following comments to Jaffe: "this is your last day of work"; and "you are finished, you are through!" Moscowitz told Jaffe that he was to remove his personal items from the school; that he was not to return to work; that he would not receive severance pay; and that he was "suspended" without pay. Furthermore, Moscowitz informed him that severely stigmatizing publicity would result if formal termination procedures became necessary. Following this discussion, Moscowitz suggested that Jaffe retire, and he presented some of the terms of early retirement. The amount of time Moscowitz gave Jaffe to consider the retirement option is unclear from the record. Jaffe's affidavit states that Moscowitz only gave him a few hours in which to consider the option. Jaffe accepted the retirement plan on October 4, 1988, eight days after the meeting with Moscowitz. Jaffe obtained an acquittal on the criminal charges against him in April 1989. The defendants have not reinstated Jaffe.
 
 
 7
 Jaffe brought this action under 42 U.S.C. § 1983, alleging violations of substantive and procedural due process in connection with the actions regarding his termination. On May 9, 1991, Moscowitz filed a motion for summary judgment, claiming entitlement to qualified immunity. The district court denied Moscowitz's motion for summary judgment in a Marginal Entry Order, which it entered on the docket on January 27, 1992. Moscowitz filed a Notice of Appeal on February 26, 1992. On March 16, 1992, the district court issued a Memorandum Opinion and Order. In its Opinion and Order, the district court held that it could not grant qualified immunity to Moscowitz because genuine issues of material fact existed as to whether the defendants denied Jaffe his "Fifth Amendment right to due process because the defendants did not refrain from action until the criminal charges were resolved, and whether Moscowitz and the Board were acting in good faith when they took action without a hearing."
 
 
 8
 Generally, the district court's denial of summary judgment is not a "final order" immediately appealable to this court under 28 U.S.C. § 1291. Nonetheless, a decision of a district court is appealable "if it falls within that small class of cases which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate jurisdiction be deferred until the whole case is adjudicated." Mitchell v. Forsyth, 472 U.S. 511, 524-25 (1985) (citation omitted). Because qualified immunity is an entitlement not to stand trial or face the burdens of litigation, rather than merely a defense to liability on the merits, the district court's denial of qualified immunity in a motion for summary judgment is immediately appealable to this court. Id. at 530.
 
 
 9
 "Government officials performing discretionary functions are afforded qualified immunity, shielding them from civil damages, as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Poe v. Haydon, 853 F.2d 418, 423 (6th Cir.1988) (quoting Harlow v. Fitzgerald, 457 U.S. 800 (1982)). To determine whether an official is entitled to qualified immunity, "[t]he relevant inquiry focuses on whether a reasonable official in the defendant's position could have believed his conduct to be lawful, considering the state of the law as it existed when the defendant took his challenged actions." Id. at 423-24. "Review of the district court's qualified immunity decision is de novo." Washington v. Newsom, et al., No. 91-2355, slip op. at 4 (6th Cir. October 15, 1992). When the qualified immunity issue arises in the context of a motion for summary judgment, "summary judgment would not be appropriate if there is a factual dispute ... involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." Jackson v. Hoylman, 933 F.2d 401, 403 (6th Cir.1991) (quoting Poe, 853 F.2d at 426). Therefore, the district court should grant summary judgment to a defendant on the basis of qualified immunity only "[i]f the undisputed facts show that the defendant's conduct, as a matter of law, did not violate clearly established legal rights." Poe, 853 F.2d at 425 (emphasis added).
 
 
 10
 At the time the events leading to this lawsuit arose, Jaffe did possess certain clearly established rights. First, as a tenured teacher, Jaffe possessed constitutionally protected interests in his continued employment. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985). These interests would entitle Jaffe to some measure of procedural due process before the defendants terminated his employment. Id. See also Ohio Rev.Code Ann. § 3319.16. Additionally Jaffe possesses a substantive due process interest which "protects specific fundamental rights of individual freedom from deprivation at the hands of arbitrary and capricious government action." Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339, 1350 (6th Cir.1992) (quoting Gutzwiller v. Fenik, 860 F.2d 1317, 1328 (6th Cir.1988)). See also Vinson v. Campbell County Fiscal Court, 820 F.2d 194, 198 (6th Cir.1987).
 
 
 11
 At this stage of the litigation, we simply cannot determine that Moscowitz is entitled to the shield of qualified immunity. The exact nature of the events which took place during the September 26, 1988 meeting are unclear, and these events form the basis of Jaffe's claims. "Under the circumstances, the legal question of immunity is dependent upon which view of the facts the trier of fact accepts." Washington v. Newsom, et. al., No. 91-2355, slip op. at 9 (6th Cir. October 15, 1992) (citations omitted). Therefore, resolution of this case by summary judgment is inappropriate because a factual dispute exists regarding the conduct upon which the issue of qualified immunity turns. See Jackson, 933 F.2d at 403.
 
 
 12
 The judgment of the district court is affirmed.
 
 
 13
 MERRITT, Chief Judge, concurring.
 
 
 14
 I concur in the Court's disposition, but I write separately to point out a difficulty I have with the case. It is difficult to determine from the record and the briefs the precise theory of recovery under the due process clause that plaintiff is trying to describe. He asserts that Moscowitz's conduct was "egregious" and an "abuse of authority," but such conduct alone does not constitute a violation of substantive due process. Under the rubric of procedural due process he does not define a particular procedural right denied to him or cite cases or scholarly material which would suggest what that right is. Obviously, before plaintiff can recover against Moscowitz he must analyze and define with some care the particular constitutional right that he believes is "clearly established." The facts in the record, taken in the light most favorable to plaintiff, appear to support a claim under Loudermill v. Cleveland Board of Education, 470 U.S. 532 (1985), and Duchesne v. Williams, 849 F.2d 1004 (6th Cir.1988) (en banc), that plaintiff was denied a pretermination "right of reply" hearing. Because the facts are in dispute on whether plaintiff was allowed to reply at his initial hearing, I believe this case should be remanded for trial as the Court decides. No other theory is apparent to me on the current record, however.